UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

KAREN V. KANE,                                                            No. 09-12470

                    Debtor(s).
_____/

Memorandum on Motion for Sanctions
_____

       The basic facts of this case are not disputed. Debtor Karen Kane filed a Chapter 7 petition on August 3, 2009. She lied on her schedules, which stated that she had no liquidated debts owing to her, no contingent or unliquidated claims against anyone, and no negotiable or non-negotiable instruments except "EE Govt bonds" having no value. In truth, she was the holder of a note worth about $72,000.00 which had been given to her in settlement of a state court lawsuit. Kane was receiving monthly payments of $1,250.00. A final payment of $61,250.00 was due on December 9, 2009.

       The Chapter 7 case was duly closed as a no-asset case on December 7, 2009. However, shortly thereafter the Chapter 7 trustee, Timothy Hoffman, was contacted by the maker of the note and learned its value. The Chapter 7 was reopened and the note administered. Kane did not contest Hoffman's complaint to revoke her discharge, and her discharge was revoked on May 27, 2010. This part of the story is sordid but not unusual: a debtor lied on her schedules, was caught, and lost her discharge. However, Hoffman's motion now before the court is not directed at Kane. Hoffman seeks civil

1

sanctions against Kane's attorney, Gregory B. Orton.   If all of Hoffman's allegations are true, Orton and Kane entered into a conspiracy to hide the existence of the note and thereby defraud Kane's bankruptcy estate.

Hoffman's case against Orton is primarily the result of incredibly bad judgment and poor lawyering by Orton himself.  Hoffman's counsel deposed Kane on March 3, 2010.  Half way through the deposition, Orton decided he had something more important to do so he left, allowing the examination of his client to continue.  With nobody there to assert the attorney-client privilege, the questioning quickly devolved into what Orton had told Kane before bankruptcy.  Kane wasted no time dropping a dime on Orton, testifying that she told Orton all about the note and the payments she was receiving before the bankruptcy.  Kane testified that Orton told her that all they had to do was disclose the court case that resulted in the note, after which it would be up to the bankruptcy trustee to "investigate the matter, to pull the file and to find out the specifics" of the note.

Orton admits than in July of 2009 he reviewed the file of the state court lawsuit which resulted in the note.  He says he was unaware of its value because the terms were confidential, and that is why he allowed Hoffman to believe, at the meeting of creditors, that the note was worthless or of only nominal value.  However, Orton also admits that on December 15, 2009,  just eight days after Kane's bankruptcy case was initially closed, he drafted, filed and served pleadings for Kane in the state court seeking to collect the $61,250.00 balloon payment.  He did not inform Hoffman of his actions, and but for the maker's call to Hoffman he would have abetted Kane in defrauding her creditors and the bankruptcy estate.

If everything Hoffman has alleged is true, Orton's conduct was criminal.  That is not a matter for this court to concern itself with, beyond performing its statutory duties under 18 U.S.C § 3057(a) and notifying Orton of his constitutional right against self-incrimination.   The only issue before the court now is whether Orton is liable to Hoffman for civil penalties for his conduct.

There is no question that Orton violated Rule 9011(b) of the Federal Rules of Bankruptcy Procedure and  § 707(b)(4)(D) of the  Bankruptcy Code, which provides that the signature of an

2

attorney on a bankruptcy petition "shall constitute a certification that the attorney has no knowledge after inquiry that the information in the schedules filed with the petition is incorrect." Orton knew of the existence of the note because Kane had told him about it and he had reviewed the state court file. He knew that the schedules, which he prepared, represented that Kane had no liquidated debts owing to her, no contingent or unliquidated claims against anyone, and no negotiable or non-negotiable instruments except "EE Govt bonds" having no value. These statements were patently false, and Orton knew it.[1] The identification of the underlying state court lawsuit in the statement of affairs in no way excuses the lies in the schedules.[2]

The only remaining question for the court to decide is the amount of sanctions Orton ought to pay. Section 707(b)(4)(B) of the Code authorizes the court to assess an appropriate civil penalty and make it payable to the trustee. Had the note been properly scheduled, Hoffman could have easily administered it without having to go through the expense of reopening the estate, and the expenses relating to the action against Kane would not have been necessary. In addition, the expenses associated with this motion would not have been necessary. Considering all of these factors, and the egregious nature of the conduct to which Orton admits, the court feels that sanctions of $20,000.00 are

---

[1] Orton admits that he should have properly amended the schedules to include the note but (referring to himself in the third person), "the issue was lost under the sheer number of cases Orton had at the time." The court finds this defense unavailing.

[2] The court does not know if Orton actually believes his meritless argument that the note was abandoned back to Kane by operation of law pursuant to § 554(c) of the Bankruptcy Code. In order for that section to apply, property must be properly scheduled so that the trustee can make a knowing and intelligent decision as to whether to administer it. The note at issue here was never scheduled at all. The statement of affairs is a separate document from the schedules. See § 521(a)(1)(B)(i) and (iii). Mentioning an asset in the statement of affairs is not the same as scheduling it. *In re Fossey*, 119 B.R. 268, 272 (D.Utah 1990); *In re Winburn,* 167 B.R. 673, 676 (Bkrtcy.N.D.Fla. 1993); *In re McCoy,* 139 B.R. 430, 431 (Bankr.S.D.Ohio 1991) ("[T]he word 'scheduled' in 554(c) has a specific meaning and refers only to assets listed in a debtor's schedule of assets and liabilities.")*; In re Medley,* 29 B.R. 84, 86-7 (Bkrtcy.M.D.Tenn 1983). In order for an asset to be abandoned by operation of law, the exact asset must be properly scheduled. *In re Pace*, 146 B.R. 562, 565 (9th Cir. BAP 1992). In this case, the note was not mentioned in the schedules and the schedules contained lies.

3

appropriate, both to make the estate whole and to deter future misconduct. The sanctions shall be payable to Hoffman.

For the foregoing reasons, the court will order Orton to pay Hoffman the sum of $20,000.00. Counsel for Hoffman shall submit an appropriate form of order.

The Clerk shall transmit a copy of this Memorandum to the United States Attorney and the State Bar of California.

Dated: July 11, 2010

  Alan Jaroslovsky
  U.S. Bankruptcy Judge

4